Good afternoon, Illinois Appellate Court, First District Court is now in session, the First Division. The Honorable Justice Michael B. Hyman presiding, case number 1-8-0272, People v. Dion Irving. Good afternoon, with me are Justices Dan Pierce and Mary Ellen Coghlan, and if each of the attorney of you please identify yourselves. My name is Adrienne River, Assistant Appellate Defender on behalf of Dion Irving. Hi, good afternoon, my name is Assistant State's Attorney Whitney Bond on behalf of the people of the state of Illinois. You each have 20 minutes, sometimes we ask how much time do you want? Lawyers never end up where they say they're going to end up, so I'm just going to say you each have 20 minutes. Ms. Rivers, you can reserve some. We aren't sticklers for time, we want to hear your arguments, we just don't want to have repetition, but we want to make sure you say what you need to tell us. So with that, understand how many minutes do you wish for rebuttal? Oh, I think five is fine, and I think I can do my opening in under ten. Okay, depending on questions. If you go over ten, we're not sure. You can take the full 15 or a little more. Okay. We have equal time, so if you would please proceed. Okay, well I raised two issues in the brief and I wanted to address them both today. The first issue is whether the trial court complied with the Supreme Court rule in making proper inquiry of the jurors, and specifically whether the judge asked about the presumption of innocence. So the transcript has no statement about that principle, the first principle in the rule, and the transcript affirmatively shows then that the court did not comply with that rule. Well, but before we get there, so we do have two unintelligible spots. Right. Is it your position that that means there's simply a single word missing in each of those spots, or is your position, you know, it could be one, it could be more words than one? Yeah, I have no way of knowing what the court reporter meant by that. All I can say is that we contacted the unintelligible. So my position is that the state is speculating. That's what the judge was talking about. But even if that is true and we could determine that, the point is that the court, the words were unintelligible to the court reporter, and that cannot be, that's not something that can be corrected. And keep in mind that the court reporter sits near the judge. So if the court reporter couldn't understand part of what the judge was saying, how could the prospective jurors understand, you know, they're sitting farther away in the court? Yeah, but the counsel, no defense counsel, or no prosecution either, as well. Nobody objected. And that indicates people were hearing it. Maybe for whatever reason, the court reporter wasn't able to take it down. But there was an objection made. And it, it, what I have a trouble with is that the judge went through each factor. You don't say went through the first one, but four times, he asked them to, is it possible to do you understand not understand you accept the instruction, raise your hand, no hand, no response, he does that four times. Now, your position would be that basically, he did the same thing twice. That is, you're saying that you forgot the first one, and he went right to the second, and he did the second twice. And the lawyers are sitting there and everybody's sitting there. And the judges in outer space saying it twice, and nobody picks that up. It's possible. I mean, they're, they're getting ready to evaluate the jurors. I don't think we can say that because there was a lack of objection that definitively, the court addressed that principle and have to keep in mind that that the transcript as it stands is the official record. So this has to be accepted that the words were unintelligible. And yes, he did say I'd go through four principles. And he seemed to divide the first principle in the because the first section he talks about the standard of beyond a reasonable doubt. And then second of all, he talks about the same. He talks about that burden of proof as staying throughout the entire trial. So it does appear it's susceptible of being interpreted as he split the first the second principle into two into two questions. Mr. Rivers, the court reporters make mistakes often. Are you saying that the defendant could not have presented a bystanders report or statement of facts or done anything to rectify this error, this unintelligent portion of the transcript? Well, bystanders report, my reading of the rule says that's something you supply where there's no transcript at all. So I don't think it applies there. I mean, there is a procedure where someone could file a motion to correct the record. But this isn't the typical situation where we know that the court reporter transcribed something incorrectly. Um, we know that she couldn't, she or she could not understand what the court said. And there's nothing in this record to indicate that that was an error on the Kate that it wasn't either. She says, well, I think it does because it says on intelligible. So her the official record and rule three as a record on appeal will be taken as true and correct unless shown to be otherwise. So this is our official record. The court border said she couldn't understand what the judge said. And that has to be accepted. There's nothing, nothing else for, for me to do. I can't get a bystander support. That's, that's not within the, um, I have a transcript. The transcript is complete. It's a complete transcript that indicates certain words and we don't know, you know, what that stands for one or two or more. That's not indicated, but it's a, it's a, uh, it's a fact that she couldn't understand. So, um, so that, that omission is pretty significant. People versus Sebi says that when the court doesn't ensure that the jurors understand and accept the presumption of innocence, then credibility contests could lean in favor of the state. And we did have a credibility contest here. Um, and I would say it was closely balanced, if not even weighted towards a defense because, um, the state's only evidence was the testimony of the complaining witness that he was the shooter. Irvin testified in his defense that he was not the shooter. And Sebi also says that part of the inquiry was like, well, part of the inquiry, um, in determining whether something is closely balanced is to look at whether there was any, um, attack on credibility and the complaining witnesses credibility was challenged. She had three felony convictions. Um, and he didn't report, he didn't go to the police right away. Uh, Irvin wasn't impeached. He didn't give incorrect or rather inconsistent statements. Uh, and the forensic evidence is consistent with his defense. Now the examiner tested both his hands and his clothes and found that he may not have discharged a firearm. So in other words, the evidence did not definitively prove that Irvin fired that gun, which was shot three times and the circumstances, uh, the state did not show any circumstances that would show how the residue could have been removed. Uh, there wasn't any evidence of rain or high wind. Uh, there was evidence that he, uh, they saw Irvin going to the office. He came right out and he was immediately detained and the test was done in fewer than three hours later. So we not only do we have a credibility, you agree, uh, that Irwin, he admitted he argued with Alan. He admitted he, right. Yes. He admitted he retrieved the gun from his van. If, and then he, right. Yes. And he admitted he was punched by Alan. Right. And he followed Alan with his gun. Right. Yes. And in he was present when the gun was used to fire the shots. Right. And, uh, the gun was, was hidden at the gas station after the shooting. Yeah. And then he talks about this guy who has a nickname who apparently runs by grabs a gun and shoots at L right. I mean, you're asking that, uh, that that's the story. And you're saying it's a close case. Yeah. I'd say it's a close case because, um, it's not, it doesn't reach that level of, of high improbability. There isn't like in, um, uh, Adams, a fact that's nearly physically impossible. There isn't a layer and layer of, of coincidences. Um, it's somebody running by at the exact moment, taking the gun out of his hands and shooting it, Alan. Well, I was nobody else knows about this guy. Well, I was going to say that it was undisputed that there were a lot of people at the gas station and it's not, uh, impossible that one of those people was, saw that very public dispute and, uh, had a beef with, uh, um, uh, the complaining witness, the court and ruling on the, um, the motion about, or ruling on the offer of proof, uh, to present the testimony of Weatherspoon. He said, listen, this is Inglewood. There's, there's a lot of shooting. So we know it's a place where there's gang violence. So, um, it's someone who obviously was nearby and there was a group there. I mean, a lot of cases when the, um, state will argue to the jury, well, we don't know motive. We don't know why this happened. We don't have to prove motive. So we have an offer of proof here. Maybe more information, presumably more information would come out if that, if you weren't, you know, had been allowed to, to testify. So this is not, um, this is not a crazy case. He's not saying, you know, a Martian ship landed and then the Martian came out and shot. He said, someone else took the gun from me and was the actual shooter. And he was trying to get a witness to corroborate that. And I think we have to be, I think it should be careful. I think it should probably be the rare case where a court makes a finding of high improbability. Because again, of course you were just reading the transcripts. We weren't there to hear the, um, to make that assessment so that that, especially here, we have a very important, um, principle that wasn't addressed and then, you know, going also, that's, it's very important as far as the, the second issue, because we're saying it's so improbable, but the, um, error of the council resulted in not being able to present a corroborating witness on that very point. So that's, that's all I had on issue one. I can move on to two unless there's something more. So the second issue concerns the offer of proof and counsel's ineffectiveness in not, um, pointing out to the court that if, um, Irvin testified that he would testify that the name of the shooter was this big G, which was the same name that Witherspoon had given. And I wanted to clarify, clarify something for the record. I read the transcript a second time, you know, to prepare. And at the time of the offer, the proof, uh, it was on the record that Irvin had not yet decided at that point, whether he would testify, but immediately after the ruling on the excited utterance, um, testimony, there was a short break. And right after that, uh, the council informed the court that Irvin would testify. So either doing during the, the offer of proof council could have said, um, here's what weather, excuse me, here's what Weatherspoon would testify to. And if Irvin would testify, this is what he would say, or council could have said right after, uh, the ruling, or even after Irvin testified, um, pointing out to the court that there's now been a connection made between, uh, the declarant statement to Weatherspoon and the shooting at issue. And I also note that the state didn't dispute on appeal that this was an excited utterance as far as the elements of, um, you know, startling events and absence of time to fabricate. And I've already argued that I thought this was at least closely balanced. And I also would argue that there would be a reasonable probability that the result would have changed because this was, um, an uninvolved witness who would corroborate Irvin's testimony to his defense. And the state had argued this was just be cumulative evidence, but the case laws is, um, clear that corroborative evidence is not the same as cumulative evidence. And so this is an error of the, of the attorney that resulted in the jury, not hearing this corroborative witness and that undermines the confidence in the outcome of the trial. So for that reason, um, a new trial is also required. Any questions? Thank you very much. Thank you proceed. Good afternoon, your honors. And may it please the court. Um, the people would highlight from the outset that with regard to the first issue, um, that on this record, the trial court did not air with its, um, obligations pursuant to rule four 31 B, but the people must generously note that the epitome of this issue is really the procedural default aspect of it. And when I say totality of the circumstances, I first noticed the court has already noted that, you know, defense counsel didn't object. No one said anything. Um, no parties. And apparently it was the only, the court reporter that had an issue with what the trial court said. I also want to point out too, that there were two motions for new trial filed in this case. There was the first one kind of rather the perfunctory, um, didn't guilty beyond reasonable doubt, but the about many different issues. Um, whether or not the trial court abuses discretion and denying the defense motion and lemonade, there was an ineffective assistance of counsel argument. Um, there was an issue same as appeal that, uh, trial court did not air it and denying the offer of proof. Um, it's a litany of issues and, and none of those issues was this particular issue that, that somehow the trial court, um, didn't comply with his obligations under rule 431 B. And I think it's important to note that when we have, you know, forfeiture, we're talking about just abject forfeiture. I think it makes up, you know, this is the reason why that trial counsel needs to go ahead and object that trial, because, you know, the case law is clear that this court would presume that if the trial counsel or a trial court had been made aware that, you know, this missing principle or this, there was a missing principle that certainly that air would have been corrected. What you're saying is kind of a, we got you because no matter if they don't correct it, then the, the argument is, well, we don't know what it is. So you have to rule in our favor and they do go to correct it. Then they don't have an argument because the judge probably will correct it the way that it is supposed to be. That, that is our position and that, you know, we're here and an appellate process, you know, an appellate prostitute when this could have been cured far below. And then, you know, because it's forfeited, the only thing that really saves us forfeiture is if this court chooses to use the plain air doctrine to review the matter. And in that regard, people, again, we would say that there was no air that defendant's entire argument is premised on this assumption that the unintelligible portions of the court reporters, you that that just meant that flat out, the trial court just didn't comply with that principle. And that's, we can't save that. I, as Justice Hyman noted earlier that, you know, he did go for Biden. This is a very learned judge. Judge Sachs has been on the bench at 26 in California since I think it's 1992. So he knows the principles. He knows going down that, you know, he needs to say the principle and he needs the agreement from, you know, the potential jury members. We don't have a full record of what the trial court said. So a bystanders report would have at least been helpful to go back and there were many parties there, including, you know, defense counsel who filed that lengthy amended motion for a new trial and didn't include this issue in it. To me, it speaks to just the totality of how the parties proceeded in this matter that that unintelligible portion of what the trial court or excuse me, the court reporter could or could not hear doesn't render this a complete failure to follow or comply with rule 431 B. Unless the record on the appeal shows otherwise, this court should presume that the trial court's findings of fact and its comport comportation with the law is is proper. And therefore, because there's no air, then there would be no plain air doctrine in which to review this forfeited matter. I would go a step further, though, because, you know, if this court should find that the trial court aired based on this record and the totality of everything before you, it would be tough to win under the first prong of the plain air doctrine. I know counsel considers the evidence close. The people do not consider the evidence closely balanced. I mean, we have two witnesses who testified that were unimpeached in terms of what happened immediately before in terms of the conflict that sparked everything. What happened when they left, you know, outside into the gas station, the confrontations that it sued. Alan testified he punched the defendant. Defendant testified he got punched. Everybody testified credibly and the same that defendant went over to the van and got the gun. I don't want to belabor the point. The court is so, you know, you know the record and you know the facts. But the only thing that really differs is that testimony between, you know, what Alan turned around and saw when he fled after he saw a defendant get a gun, he took off. And when he turned around, he saw the defendant firing a weapon at him. And this is a defendant that he had just been in a lengthy confrontation with and a defendant that he had just defended didn't have beef before this. So common sense is probably what really did go down as opposed to the defendant's testimony that as a 450 pound six foot three build of a man that a random person that he either called Big Worm or Big G came out of nowhere and he said snatched the gun from his hand, fired the three shots, gave him the gun back. And then defendant proceeds to attempt to conceal the weapon, which that too was corroborated by video and defendants own admission. So the only thing that we have that really contradicts each other is obviously who did the shooting. Defendant says a phantom shooter did it. And Alan says, no, the guy that I just punched in the face shot at me. So the people would submit that the evidence is not closely balanced. And because it's not closely balanced, plein air doesn't say it's this forfeiture. If there are any further questions, I can move on. Thank you. With regards to the ineffectiveness of defendants trial counsel, in terms of his offer of proof, this wasn't just an isolated sort of, you know, judges is kind of what we really want to talk about with Weatherspoon. This was lengthy discussion, where they went back and forth the parties, the trial court, defense counsel, the assistant state's attorney, they went back and forth a pause for a bit of time in order to get case law, relevant case law to present. Before one of those pauses, the trial court even said, Hey, wait a minute, is this defendant going to testify. And there was a big discussion with the defendant himself where he was admonished about his right to testify. And it's his right. It's not trial counsel's right. So when he told the court, I still I believe the quote is I still have not made up my mind. So when he told the court, I still have not made up my mind, then it seems difficult to argue that trial counsel was ineffective for not making an offer of proof, where he wasn't sure that the defendant was even going to testify. So I, it's just not, he just was not ineffective in that manner, because he's not going to, you know, burn any goodwill with the court by telling the judge something that is not going to happen. And then in addition, as far as trial counsel being ineffective, because he did not, like kind of reopen the offer of proof after the defendant testified, people would submit that this was a strategic matter. I mean, in terms of there was nothing in the defendant's testimony that would elevate this phantom shooter admission into an excited utterance. The trial court had initially found and told defense counsel that it was too speculative. It wasn't particularly spontaneous separate declaration. Weatherspoon was, you know, physically stopped this Big G and asked him what happened. Big G didn't have time to reflect on it. It wasn't like he was a victim that was victimized and was just telling, you know, somebody in authority what had happened. So none of none of what the defendant testified to really would change that. So it seems like it would be a better strategy to not sort of ask for something that he wouldn't really be asked or shouldn't really be asking for considering the trial court had already spoken on the matter. And then I would just add to that it was a solid strategy because now the defendant has gotten in that evidence that he wished to get in through Weatherspoon's testimony that somebody else was the shooter wasn't defendant and they were able to do that with the defendant's testimony. The jury heard that particular evidence that there was another man that came out of nowhere and fired the shots without having to have Witherspoon testify in addition to the defendant, which would just add another layer of potentially a rigorous cross-examination that could poke holes in the veracity of that entire story. So by not reopening and asking that Witherspoon be able to testify, the jury heard the defendant's theory of defense that he was not the shooter. He heard it. There was already the cross-examination. And all it takes is one juror to believe the defendant's theory of defense. And he got that in without any further more attacked to it via another witness testimony. If there are no other questions. Thank you very much. Thank you. Thank you. Well, the state spent a lot of time on forfeiture, but we realize it's forfeited. That's why we have plain error. And yeah, nobody objected here. There was so that the attorneys did not did notice. We don't know. But the point is that plain error allows you to review this issue. And we can't decide the issue about the first issue based on who the judge is. Oh, we know he knows the principles. How many cases have we seen where judges skipped a principle or didn't use the right language? This happens all the time. Council has not addressed the standard rule 3 29. The record on appeal shall be taken as true and correct and correct unless shown to be otherwise. They have not moved to correct this. Well, but isn't that you're burdened in that if you're going to be relying on the unintelligible is being a basis for you to make an argument is and even you said you you went back to the court reporter see if you could if it was intelligible or they could clarify it and you could. So you knew you had that burden. And yet you didn't go to the judge to see if what you could do to to have the unintelligible made intelligible. Our burden is to provide a complete record. This is a complete record that includes the transcribing that certain words were unintelligible. I confirmed with the court reporter that that was correct that she could not hear them. So there is nothing to correct because there was some of the words stated that aren't in there. We know that right. So something is missing. So you could have had a hearing. What do you mean? No, something was not able to be heard. Well, it's missing from the transcript. She put unintelligible is a right. So the record is shows that the court reporter could not understand. And we can't we can't have any kind of hearing where we could determine that even though the court reporter could hear it, that the jurors could hear it. It doesn't matter whether the attorneys thought they heard it or not. The point is that you have to ensure that the jurors understood and accepted that principle. That doesn't help you one way or the other. The fact it's unintelligible to her doesn't mean the jury's did or didn't. I think that was Justice Coughlin's point. That doesn't mean anywhere. I don't understand how you couldn't have gone back to the judge with the lawyers who were before the judge and said, Okay, this is missing in here. We need to see if we can clarify it because we may have a issue to bring in the appellate court. But instead, you just left it there. And to me, as I said to Miss Boyd, the idea is that that gets you again. I got you. That's what you're saying. Okay, we don't know what it is. Therefore, you have to give us a new trial. Um, just because it's unintelligible. Well, that it's because this isn't just a typical thing where you that the court reporter transcribed something like one word instead of a different word. And we can all agree that that the transcript should be should be corrected. You can't correct the fact that she didn't hear it. And we can't. We can't determine in any kind of corruption hearing that the jurors did hear it. Yes, we can. We don't need to know. We don't know what the jurors here. We never know what the jurors here. We don't hear from the jurors, you know, just because the judge here something. It doesn't mean the jurors here. Sometimes somebody doesn't keep their voice up and the judge said, keep your voice up. Well, you don't know if the juror heard what they said before or not. I mean, I don't. We don't decide cases based on whether we think the jurors heard something. How can we do that? We have no basis to come to that conclusion. Well, this isn't whether someone was sleeping and didn't hear a part of the evidence before someone can be placed on the jury. They have to state that they record that we have doesn't show that. And no, maybe it does. We don't know. We don't know. And you're trying to use that is trying to do something wrong. I'm just saying there was a mechanism to get it corrected. And that was to go to the judge and the lawyers and either decide we don't know what was in there or we do know what was in there. The fact is Council Miss Boy said that nobody raised this issue except for an appeal kind of leads one to believe that it's something that appellate counsel came up with that nobody else even considered at all at any time. Well, I don't know. You mean came up with? I'm just going by what the record says. And the record has to be assumed that it's correct. And the record reflects that the judge was not did not address the presumption. No, you said that we have to make the record is correct. And he did four times and said he was making four points. So I think the presumption is the other way around. The presumption is he was correct. You have to show that for some reason he didn't say what he was supposed to. Any presumption that we think the specific judge knew that all the principles and would have said that even putting aside that often judges do make errors and they they don't follow that they don't follow the rules. Um, the presumption is rebutted by the record. The record is presumed to be accurate. And the record is that what he said could not be heard. No, as it the court reporter found it unintelligible. She might have heard. She is the one that makes the official record. That's all we can go by. Right. And you have an obligation to see that that official record is complete enough for us on appeal to make a determination. Well, I mean, the case law on providing a record complete record is when a transcript is missing. So I can't do it by the bystanders report says if no verbatim transcript is obtainable. So I don't I don't think I have a burden to get a bystanders report. Wouldn't you agree that you don't have a verbatim transcript? You have a transcript that says you've got two unintelligible portions. Anyone that's ever done a trial anywhere, probably in the United States of America knows that this happens all the time. The court reporter is only a human being. They don't always hear the court. I think you're putting an awful lot of well, the core reporter's, um, notes is how the record is made and ruled through 3 29 is a record on appeal. She'll be taken as true unless shown to be otherwise. Now the state thinks that, uh, I don't know anything about any notes because that's not in any part of the record that I saw. No, I mean, the court, the court were the transcript reflects unintelligible. To me, that's an incomplete record. What I meant by notes, Your Honor, was that the court reporter takes notes and then they use those notes to write the transcript. That's what I'm referring to. And we confirmed with the with the court reporter that anything that the court reporter is doing with notes is not part of this record unless I overlook something. Give me a section. Where in the record is it? I'm just saying I'm just referring to the general procedure of how transcripts are made record about the court reporter's notes or how this happened, that we have an unintelligible words in the transcript words, phrases we don't know. Yeah, I'm understanding the question. Right? No, the record doesn't have anything about her notes. I was just referring to the process whereby transcripts are made and that I just confirmed. We all know how what the process generally is. But wouldn't you agree that people make mistakes? We're all fallible. Again, I have to I have to rely on the Supreme Court rule. And so her and her statement that something could not be heard has to be taken as true. She didn't make any statement. It's an unintelligible portion in the transcript. Well, she said, if you say it's unintelligible, it's because she couldn't understand what he said. That's what understandable. Well, that's what is indicating. We're going to circles now. I understand your position. Okay, fine. Thank you. Um, as far as the second issue, the council did tell the judge after the ruling that urban would testify and there was nothing to prevent council from saying during the offer of proof. And also, if urban should testify, this is what he would testify to tying those, um, the two names, the same name together, which is not the phantom shooters that state keeps referring to. He gave the same name. That's the point why there would be connections. And I disagree also with her, uh, representation about the court's ruling. Uh, he did not say anything. He did not say anything about the other elements about the excited utterance. The only basis for not allowing that witness to testify was the fact that he didn't see any connection to what the declarant had said to Witherspoon and the shooting at this issue. And this, um, uh, so the failure of council here went directly to that crucial part of the of the could be a strategy. He wanted to get this, this, uh, guy Witherspoon to testify. Nothing changed that the attorney would just decide now. Oh, now it would be good strategy. Now I don't want him to testify. And it was, it's absolutely corroborative. The jury didn't believe him. There's no reason why you would change. We would change your mind. There's no reason at all. So that's all I had in rebuttal. Unless there's any other questions. Yeah. All right. Well, thank you very much on both Miss Rivers and Miss Boyd. Your arguments were excellent. Research. Excellent as well. We appreciate your professionalism and we will take the case under advisement and the rules short shortly.